FILED

2016 Jul-28  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MELISSA ANN GAYLORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  2:15-CV-1079-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Melissa Ann Gaylord ("Ms. Gaylord") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Ms. Gaylord timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g)

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Gaylord was a 37-year-old woman at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 20, 208). Ms. Gaylord completed her high school education. (Tr. 213). Her past relevant work includes waitressing and bartending. (Tr. 213). Ms. Gaylord claims she became disabled on February 15, 2008, due to multiple sclerosis ("MS"), migraines, and anxiety. (Tr. 183, 190, 208, 212).

Ms. Gaylord filed her application for a period of disability and DIB on June 1, 2011. (Tr. 208). She also filed a Title XVI application for SSI on June 1, 2011. (*Id.*). The claims were denied by the Commissioner on August 3, 2011. (Tr. 79).

Ms. Gaylord filed a timely written request for a hearing on September 7, 2011. (Tr. 91-92). The hearing was held on August 8, 2013. (Tr. 27). The ALJ concluded that Ms. Gaylord was not disabled and denied her DIB and SSI claims on September 5, 2013. (Tr. 12-20).

On October 24, 2013, Ms. Gaylord requested the Appeals Council ("AC") to review the ALJ's decision. (Tr. 2, 275). The AC denied this request for review on May 7, 2015. (Tr. 1-6).

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Ms. Gaylord filed a complaint on June 26, 2015, which asks this court to review the ALJ's decision. (Doc. 1). This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to

provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish an entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i–v). The Commissioner must determine in

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of 2015.

sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)     whether the claimant can perform her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Gaylord had not engaged in substantial gainful activity since the alleged onset of her disability on February 15, 2008. (Tr. 14). Her date last insured was June 30, 2013. (Tr. 14). The ALJ also found that Ms. Gaylord's MS was a severe impairment based on the requirements set forth in Regulations 20 C.F.R. §§

5

404.1520(c) & 416.920(c). (*Id.*). The ALJ further determined Ms. Gaylord's anxiety was not severe under the requirements in Regulations 20 C.F.R. §§ 404.1520a(d)(1) & 416.920a(d)(1). (Tr. 15). Then, the ALJ held the medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations. (*Id.*).

The ALJ concluded that Ms. Gaylord's impairments do not prevent her from performing her past relevant work. (Tr. 19). The ALJ determined Ms. Gaylord retains a residual functioning capacity ("RFC") to perform a full range of light work with the exception that she is never to climb ladders, ropes, or scaffolds and she must avoid exposure to extreme cold, extreme heat, wetness, and humidity. (Tr. 15-16).[4]

The vocational expert testified that Ms. Gaylord's past work experience as a waitress is characterized by the Dictionary of Occupational Titles[5] as "light" work and semi-skilled. (Tr. 57). Given Ms. Gaylord's RFC and the vocational expert's testimony, the ALJ concluded that Ms. Gaylord could perform her past relevant work as a waitress. Therefore, he determined that she was not disabled.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

[5] The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for light work. (Washington, D.C.: U.S. Dept. of Labor, Employment and Training Administration: U.S. G.P.O., 1993). Available online at: http://www.occupationalinfo.org.

Accordingly, the ALJ determined that Ms. Gaylord was not eligible for DIB because she was not disabled under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 19). Additionally, the ALJ found Ms. Gaylord was not eligible for SSI because she was not disabled under § 1614(a)(3)(A) of the Social Security Act. (*Id.*).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). The court has the "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6] Ms. Gaylord contends the ALJ's decision (1) is not supported by substantial evidence and (2) failed to account for new evidence submitted to the AC. (Doc. 9 at 2).

## I.   THE ALJ'S DISABILITY DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND THE ALJ DID NOT ERR BY DISCREDITING DR. RISER'S OPINION.

Ms. Gaylord claims the ALJ's decision is not supported by substantial evidence because, with the addition of Dr. Riser's opinion testimony, the ALJ's determination is erroneous. Further, Ms. Gaylord argues the ALJ should have considered Dr. Riser's

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

vocational limitations and, had he done so, he would have found Ms. Gaylord to be disabled.

## A.  The ALJ's Disability Determination Is Supported By Substantial Evidence.

The ALJ concluded that Ms. Gaylord did not "meet the requirements under any listed impairment described in Appendix 1 to Subpart P, Regulations No. 4." (Tr. at 15). Ms. Gaylord does not challenge this particular finding.

The ALJ credited Ms. Gaylord's treating physician, Dr. Eslami, with achieving and maintaining remission of her MS. (Tr. at 17). The ALJ relied on Dr. Eslami's treatment record beginning in May of 2008, where Dr. Eslami characterized Ms. Gaylord's MS as "benign." (Tr. at 283). Furthermore, Dr. Eslami noted that she had not had any relapses and was "doing fair," with the exception of "occasional" headaches that went away with medicine. (Tr. at 283). Again in 2008, Dr. Eslami noted Ms. Gaylord was 5/5 strength in all four extremities and her muscle tone, gait, and cerebellar function were normal. (*Id.*).

Dr. Eslami continued his treatment of the claimant into February of 2009, where again he reported that Ms. Gaylord's strength, coordination, gait, and cerebellar function were normal. (Tr. 282). Similarly, Dr. Eslami examined Ms. Gaylord twice in 2010 and noted that Ms. Gaylord's strength was fair, gait was broad

based, and her cranial nerves were "unremarkable." (Tr. 281). Dr. Eslami maintained his opinion that Ms. Gaylord's MS was in remission through his last visit with Ms. Gaylord in November of 2012. Despite his remission opinion, Dr. Eslami did note that Ms. Gaylord was suffering back spasms, leg craps, and headaches. (Tr. 285, 287, 288). Nevertheless, Dr. Eslami never withdrew his remission diagnosis.

Additionally, the ALJ relied on Ms. Gaylord's own testimony as to her limitations and daily activities in reaching his conclusion. (Tr. 16). Ms. Gaylord testified that she cared for her four children, which included a one-year old and a two-year old. (Tr. 32). Furthermore, Ms. Gaylord stated she was able to keep up with household chores such as dishes, laundry, mopping the floors, vacuuming, and even traveling alone to the grocery store. (Tr. 231, 233). The ALJ found that "[a]n individual with the claimant's alleged physical impairments and symptoms would not be expected to perform these extensive activities." (Tr. 18).

Notwithstanding Ms. Gaylord's subjective complaints, the longitudinal medical record supported the ALJ's decision. The ALJ appropriately valued Dr. Eslami's opinion. A treating physician's medical opinion is given special weight because such a medical provider is "able to provide a detailed, longitudinal picture of [a claimant's] medical impairments." 20 C.F.R. § 404.1527(d)(2); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that the testimony of a

treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986))). Additionally, Ms. Gaylord's daily activities did not contradict the longitudinal medical history or the ALJ's decision. As mentioned above, Ms. Gaylord was able to adequately support her family with little to no interruptions caused by her severe impairment. Without additional consideration of new evidence to the contrary, Ms. Gaylord's longitudinal medical history and daily activities provide substantial evidence in support of the ALJ's decision to discount Ms. Gaylord's subjective complaints and deny DIB and SSI benefits.

### B.    The ALJ Did Not Err By Discrediting Dr. Riser's Opinion.

Ms. Gaylord contends "[h]ad the ALJ added to his disability equation the medical information from Dr. Riser," specifically Dr. Riser's opinion evidence, he would have found Ms. Gaylord disabled. (Doc. 9 at 20). Ms. Gaylord first visited Dr. Riser, a MS specialist, on July 30, 2013, Tr. 335, over a week before the ALJ held an evidentiary hearing for Ms. Gaylord's DIB and SSI applications. (Tr. 25). At this clinical assessment, Dr. Riser stated Ms. Gaylord was 5/5 in all muscle groups and +2 bilaterally in deep tendon reflexes.[7] (Tr. 338). For Ms. Gaylord to have been +2

---

[7] Tendon reflex is "a reflex act (as a knee jerk) in which a muscle is made to contract by a blow upon its tendon." WEBSTER'S MEDICAL DESK DICTIONARY 707 (1986).

bilaterally in deep tendon reflexes placed her as having a "normal reflex" in her biceps, triceps, knees, and ankles. Dan J. Tennehouse, ATTORNEYS MEDICAL DESKBOOK § 13:35 (Thomson/West 2006).

It is unclear from the record whether Ms. Gaylord visited Dr. Riser again on August 6, 2013, or whether that is the date on which Dr. Riser completed forms based on Ms. Gaylord's July 30, 2013, clinical visit. (Tr. 341). However, notwithstanding Ms. Gaylord's "normal" reflexes and full strength in all categories, Dr. Riser reported that Ms. Gaylord could never do any of the following:  pushing and pulling movement, climbing stairs or ladders, gross or fine manipulation, bending and/or stooping movements, reaching, and working around hazardous machinery. (Tr. 341). Therefore, Dr. Riser's opinion evidence is central to Ms. Gaylord's disability claim, because it is the only medical opinion significantly limiting Ms. Gaylord's work ability based upon her MS. Accordingly, the court will analyze the ALJ's reasons for not giving any weight to Dr. Riser's opinion evidence.

It is a firmly established principle that the ALJ may reject a medical opinion if the underlying evidence does not support the doctor's findings. *See Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). To determine credibility of a doctor's medical opinion, generally more weight is given to the

opinion of an examining source, however the mere existence of an examining relationship is not the only relevant factor in determining the weight to be given to a medical opinion. *See* 20 C.F.R. § 404.1527(d).

> [T]he ALJ is permitted to consider various factors when evaluating weight to be accorded to a medical opinion, including: (1) the existence of an examining relationship, (2) the length, nature, and extent of any treatment relationship, (3) whether the opinion is amply supported, (4) the extent to which the opinion is consistent with the record as a whole, (5) whether the source is a specialist, and (6) the existence of other factors which tend to support or contradict the opinion.

*Richardson v. As true*, No. 2:10-CV-02296-VEH, (Doc. 11 at 10) (N.D. Ala. June 21, 2011).

In his ruling, the ALJ rejected Dr. Riser's opinion evidence because (1) Dr. Riser's opinion was based on the claimant's subjective reports and (2) was "not consistent with prior testing." (Tr. 18). Specifically, the ALJ disregarded Dr. Riser's opinion evidence regarding Ms. Gaylord's work limitations. (Tr. 18).

First, although Ms. Gaylord sought Dr. Riser's medical opinion for treatment, Ms. Gaylord did not have the opportunity to visit Dr. Riser with the "frequency consistent with accepted medical practices for the type of treatment and/or evaluation required for [MS]." 20 C.F.R. § 404.1502. Thus, Dr. Riser is considered a

"nontreating source"[8] because, at the time of the ALJ's decision, Dr. Riser did not have an ongoing treatment relationship with the claimant.[9]

Second, the ALJ discredited Dr. Riser's opinion testimony because the doctor's own report and the record as a whole do not support the doctor's findings. The ALJ pointed to Dr. Riser's statements that the "claimant was intact from [a] neurological perspective and she was ambulatory without an assistive device despite intermittent fatigue." (Tr. 17). Dr. Riser reported Ms. Gaylord had no pain "present in any significant degree." (Tr. 340). These statements, combined with Dr. Riser's strength and deep tendon reflex testing results, are inconsistent with the vocational limitations placed on Ms. Gaylord by Dr. Riser. Therefore, the ALJ did not commit reversible error in rejecting the nontreating opinion evidence of Dr. Riser.

Finally, although Dr. Riser is a MS specialist, the ALJ's decision to reject is offset by the ALJ's appropriate reliance upon the opinion Dr. Eslami, a specialist qualified to determine the neurological affects of MS. The court acknowledges a specialist's opinion can be weighted more heavily than that of a nonspecialist;

---

[8] Nontreating source is defined as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

[9] While Ms. Gaylord has had subsequent visits with Dr. Riser since the ALJ's decision, this court reviews the ALJ's decision in light of the evidence before the ALJ at the time of his determination.

however, here there are two competing opinions from two qualified specialists. Therefore, under all of the circumstances present here, the ALJ's reasoning for crediting Dr. Eslami's medical reports and discrediting Dr. Riser's was not error.

### C.   The ALJ Properly Established Ms. Gaylord's RFC and Properly Relied on the VE's Testimony.

The ALJ found that Ms. Gaylord had the RFC "to perform light work . . . except [Ms. Gaylord] can never climb ladders, ropes, or scaffolds . . . [and] must avoid all exposure to extreme cold, extreme heat, wetness, and humidity" however, "[s]he can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs" and "have occasional operational control of moving machinery, unprotected heights, and hazardous machinery." (Tr. 15-16).

Dr. Riser provided Ms. Gaylord with the only detailed medically determined RFC, although for reasons previously discussed, Dr. Riser's opinion evidence was given no weight. However, because of the lack of a complex medical history, a medically supported RFC by a physician who saw the claimant in person is not necessary in the context of this case. *See Green v. Social Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of

disability is reserved for the ALJ." (citing 20 C.F.R. §§ 404.1513, 404.1527, 404.1545)). Instead, the ALJ relied on Ms. Gaylord's physical limitations described by Dr. Eslami in combination with Ms. Gaylord's own testimony regarding her daily activities to formulate her RFC.

The ALJ properly drew from Dr. Eslami's medical records and incorporated those limitations into Ms. Gaylord's RFC. Specifically, the ALJ included Dr. Eslami's advice to refrain from hot temperatures and hot showers. (Tr. 16, 287). Further, the ALJ added additional limitations such as "claimant can never climb ladders, ropes, or scaffolds" and claimant can only have "occasional operational control of moving machinery, unprotected heights, and hazardous machinery." (Tr. 16). These additional limitations reflect Dr. Eslami's diagnosis of sporadic dizziness, headaches, and muscle spasms. (Tr. 279-88). Additionally, Ms. Gaylord's RFC is consistent with the lack of vocational restrictions suggested by Dr. Eslami and his opinion that Ms. Gaylord's MS was in remission.

Additionally, the ALJ relied on Ms. Gaylord's report about her daily activities. The ALJ limited Ms. Gaylord's light work RFC by stating she could only "occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs." (Tr. 16). This correlates to Ms. Gaylord's indication that, generally speaking, she was able to maintain significant upkeep of her household and her personal needs. More

specifically, Ms. Gaylord's reported that she was able to "cook[], pick[] up around the house, perform[] personal care activities, wash[] dishes, mop[] floors, vacuum[], shop[] in stores, handle[] money, watch[] television, and talk[] on the phone." (Tr. 16, 229-31).

Finally, the ALJ posed a hypothetical question to the VE regarding Ms. Gaylord's credible limitations. Based upon the ALJ's RFC, the VE testified Ms. Gaylord could maintain her previous employment as a waitress. (Tr. 59). The appellant argues the ALJ erred by not adhering to Dr. Riser's work limitations for Ms. Gaylord; however, as previously stated, the ALJ properly discredited Dr. Riser's opinion evidence. Therefore, the ALJ applied proper legal standards in weighing all evidence before him and the ALJ's determination of Ms. Gaylord's RFC is supported by substantial evidence.

## II.   THE NEW EVIDENCE OF MS. GAYLORD'S MRI SUBMITTED TO THE AC DOES NOT REQUIRE REMAND.[10]

The focal point of Ms. Gaylord's new evidence argument is "that the medical information tendered to the Appeals Council [needs to] be considered in the overall disability determination." (Doc. 9 at 2-3). Specifically, Ms. Gaylord contends that

---

[10]   The following framework, analysis, and disposition persuasively flow from the undersigned's decision in *Hayes v. Colvin*, No. 4:12-CV-0809-VEH, (Docs. 10, 11 ) (N.D. Ala. Sept. 6, 2013) and *Vinson v. As true*, No. 5:08-CV-0532-VEH, (Docs. 11, 12) (N.D. Ala. Apr. 7, 2009).

remand is appropriate because the ALJ did not have the benefit of the September 13, 2013, enhanced brain MRI results. (Tr. 344). This argument raises the initial question of whether Ms. Gaylord has procedurally preserved this issue.

## A.    Ms. Gaylord Failed To Preserve this Issue.

"[W]hen a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the AC to deny review of the administrative law judge, [the court] need not consider evidence submitted to the AC." *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1265–66 (11th Cir. 2007) (explaining *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)). Thus, if only the denial of benefits is contested on appeal, this court need not review the additional evidence submitted to the AC.

In her brief, Ms. Gaylord does not argue that the AC erred in denying review of her case. Instead, Ms. Gaylord only expressly challenges the ALJ's denial of disability. (Doc. 9 at 2-3, 8). Ms. Gaylord's brief cites to *Falge v. Apfel*[11] for support; however, the Eleventh Circuit in *Ingram* limited *Falge*'s holding and made it clear that if a plaintiff does not appeal the AC's denial of review, then the claimant has

---

[11]  The Eleventh Circuit in *Falge* held that a court does not need to review an AC's decision to deny review when the plaintiff only contends the ALJ's decision was not supported by substantial evidence. 150 F.3d at 1324.

waived the issue in the district court. *Ingram*, 496 F.3d at 1265-66.[12]

However, because Ms. Gaylord does generally complain about the importance of her new evidence on appeal, the court will assume that Ms. Gaylord has preserved her right to challenge the denial of review by the AC.

### B.     The Additional Evidence Does Not Require Remand of the Case.

A claimant may submit "new evidence at each step of th[e] administrative process," which includes submitting new evidence before the AC. *Ingram,* 496 F.3d at 1261. The AC must consider all "new, material, and chronologically relevant evidence" submitted before it. *Id.* If the AC denies review and refuses to consider newly submitted evidence, the decision to deny review is subject to judicial review. *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law" (citing 20 C.F.R. §§ 404.970(b), 416.1470(b))). If a "claimant properly presents new evidence to the AC, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Conversely, if one or more of these criteria are not met, then the claimant's

---

[12] "Our discussion in *Falge* about the scope of judicial review of a decision of the Appeals Council to deny review is dicta." *Ingram*, 496 F.3d at 1265.

proof is not "'properly present[ed]' to the AC" and a remand is not appropriate, "even if the AC acts perfunctorily." *Alford v. Colvin*, No. 4:12-CV-2829-VEH, (Doc. 20) (N.D. Ala. Sept. 9, 2014) (citing *Ingram*, 496 F.3d at 1262). Therefore, this court must consider whether the MRI submitted by Ms. Gaylord to the AC qualifies as new, material, and chronologically relevant evidence, and, if so, whether the AC's decision to deny review was erroneous.

### 1.    New and Noncumulative Evidence

For the AC to consider newly submitted evidence, the evidence must be both new and noncumulative. *See Falge*, 150 F.3d at 1323 ("To succeed on a claim that remand is appropriate, [a claimant] would have had to show that (1) new, noncumulative evidence exists . . ."); *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) ("To succeed on her claim that a remand is appropriate, Vega must show that: '(1) there is new, noncumulative evidence . . .'" (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986))).[13] The MRI submitted to the AC qualifies as evidence new to the record, as the MRI was taken on September 13, 2013, eight days after the ALJ rendered his decision and no evidence similar to the MRI

---

[13] The Eleventh Circuit has since clarified the test's third prong should be "whether the new evidence is chronologically relevant." *Ingram*, 496 F.3d 1261. This clarification is due to confusion between the standard for new evidence submitted to an AC and the standard for new evidence submitted to a district court. *See id.* ("We hope that our discussion of the dicta in *Keeton* and *Falge* will clear up this confusion to the benefit of both district courts within this Circuit and our sister circuits.").

appears on the record. (Tr. 20, 344). However, although the MRI qualifies as new evidence, the MRI is cumulative evidence because it does not add any disability-significant information to the record. *Cf. Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (holding "new objective medical evidence" regarding the same underlying ailment that substantiates otherwise subjective complaints is new and noncumulative evidence).

Dr. Riser's "SUMMARY OF FINDINGS" regarding the MRI reveal that it was an "abnormal MRI of the brain" that "reveal[ed] diffuse white matter changes consistent with [the] patient's known history of multiple sclerosis." (Tr. 344) (emphasis added). This additional information is consistent with the ALJ's finding that Ms. Gaylord did in fact suffer from MS. Further, Dr. Riser's summary does not suggest any additional vocational limitations in light of the MRI. (*Id.*). Therefore, as the ALJ had already determined Ms. Gaylord suffered from MS based upon the evidence contained in the record, the MRI constitutes merely cumulative information and remand is not appropriate. *Cf. Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988) (holding that new evidence submitted to the AC was new and noncumulative since it contained a diagnosis of total disability from a treating physician and a VE's opinion).

Nor does Ms. Gaylord contend in her brief that the MRI revealed additional

information regarding her proper RFC. Instead, Ms. Gaylord argues that the ALJ was unable to take into account the additional opinion evidence provided by Dr. Riser. (Doc. 9 at 7). However, this argument is without merit, as the ALJ clearly reviewed that opinion evidence at the evidentiary hearing and on the record. (Tr. 30). Further, the ALJ referenced the same medical opinion evidence in his September 5, 2013 opinion. (Tr. 18).

In support of her contentions, Ms. Gaylord suggests *Cannon v. Bowen* as an applicable precedent. 858 F.2d 1541 (11th Cir. 1988). However, in *Cannon*, the claimant was hospitalized after the ALJ's decision, and provided new opinion evidence indicating that he could "no longer return to gainful employment for an indefinite period of time," along with several other specific work limitations. *Id.* at 1546. Conversely, Ms. Gaylord's additional evidence offers no new diagnosis or recommendations on her work limitations, therefore *Cannon* is not equivalent to this case.

Additionally, Ms. Gaylord directs the court to *Caulder v. Bowen*, 791 F.2d 872 (11th Cir. 1986). However, the facts in *Caulder* are too dissimilar to apply here. In *Caulder*, the claimant submitted significantly different evidence, including several doctors' opinions regarding work limitations and his disability. *Id.* at 877. Unlike in the present case in which the ALJ found–even without the MRI–that Ms. Gaylord did

in fact suffer from MS but that the severe condition was in remission, in *Caulder* the additional evidence provided objective support of the claimant's subjective complaints. *Id.* Prior to Mr. Caulder's submission of the new opinion evidence, the record was only supported by his subjective complaints. *Id.* Thus, in sharp contrast to Ms. Gaylord's case, the new evidence in *Caulder* was appreciably different than the preexisting evidence contained in the record here.

Therefore, although the MRI evidence is new to the record, the evidence is cumulative in nature as it does not substantially alter the contents of the record in a non-redundant manner. Thus, remand on the basis of the MRI is not appropriate.

### 2.    Materiality

Without additional evidence of Ms. Gaylord's work-related limitations derived from the MRI, the MRI is not material to the disability determination. New evidence is material when it is of such a nature "that a reasonable possibility exists that the new evidence would change the administrative result." *Falge*, 150 F.3d at 1323. The MRI evidence submitted to the AC is not material because there is not a "reasonable possibility" the new evidence would change the ALJ's decision.

As previously explained, the MRI merely corroborates the ALJ's finding that Ms. Gaylord did in fact suffer from MS. This additional evidence does not obviously indicate that Ms. Gaylord's condition has deteriorated. Moreover, Ms. Gaylord does

22

not argue that such evidence correlates with placing further work-related limitations on her. Furthermore, the record bears no previous MRIs to compare the state of Ms. Gaylord's MS at different time periods or how this most recent MRI could reflect a decline in Ms. Gaylord's physical capabilities or motor functions. (Tr. 344). Additionally, Ms. Gaylord does not argue in her brief that the MRI would cause the ALJ to alter his decision, only that Dr. Riser's opinion evidence–which the ALJ had and properly considered–would have that effect. (Doc. 9 at 7).

Therefore, because the new evidence adds no disability-related information to the record, no reasonable possibility exists that the MRI would have resulted in a different disability decision by the ALJ. Thus, the MRI is not material and remand is not appropriate.

### 3.    Chronological Relevance

Because the MRI is neither noncumulative nor material, this court does not need to analyze the chronological relevance of the MRI. All three criteria must be met. Accordingly, even assuming that Ms. Gaylord has not waived the issue, the AC did not commit reversible error in its decision to deny review.

### CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is

supported by substantial evidence and applies the proper legal standards.

Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 28th day of July, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

24